COMMONWEALTH *vs.* WILLIAM H. GOGAN, JR.

Berkshire. January 5, 1983. — May 17, 1983.

Present: WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Judge. Practice, Criminal,* Disqualification of judge, Judicial discretion, Mistrial, Fair trial, Sequestration of witnesses. *Evidence,* Hospital records.

An attorney sitting as a special justice at the jury trial of a criminal case was not required to disqualify himself simply because he had represented a party in a civil suit against the defendant's sister four years earlier and had recently represented one of the Commonwealth's principal witnesses. [258-260]

No abuse of discretion appeared in a criminal case in the denial of a motion for a mistrial after police officers testifying for the Commonwealth had apparently violated an order for sequestration of witnesses. [261-262]

The record in a criminal case did not support the defendant's claims that the refusal of the judge to conduct a voir dire of police officers who had apparently violated a sequestration order deprived him of an opportunity to prove prejudice and that he was prevented from cross-examining a police witness as to the conversation among the officers. [262]

At the trial of complaints charging assault and battery on a police officer and disturbing the peace, there was no error in the admission in evidence of a hospital record containing notations that the defendant had been intoxicated and violent on his admission to the hospital. [262-264]

COMPLAINTS received and sworn to in the District Court of Central Berkshire on June 2, 1975.

On appeal to the jury session of that court, the cases were tried before *Ferris,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*David E. Hoyt* for the defendant.

*Paul M. Vrabel,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was charged with assault and battery on a police officer, under G. L. c. 265, § 13D, and disturbing the peace, under G. L. c. 272, § 53. He was found guilty by a District Court judge on both complaints and appealed his convictions to a jury of six session of the District Court. In November, 1976, the jury acquitted the defendant of the charge of assault and battery on a police officer, and found him guilty of disturbing the peace, for which he was fined $250. After a series of procedural delays, the defendant's appeal was finally docketed in the Appeals Court on May 3, 1982. We transferred the case to this court on our own motion. The defendant contends that the trial judge's failure to recuse himself, his conduct of the trial, and his denial of motions for a mistrial and for a required finding of not guilty denied the defendant a fair trial and due process of law. The defendant also argues that the admission in evidence of his hospital records was prejudicial error. We find no merit in any of these contentions, and we affirm the judgment of the District Court.

We summarize the evidence. The defendant was arrested on May 31, 1975, for incidents arising from a party given for him by his family at the Pittsfield Elks Club. Approximately 170 guests had been invited to celebrate the defendant's recent wedding. The Commonwealth's witnesses were all Pittsfield police officers. Officer Albert Hubbard, who was not on duty that night and was a patron at the Elks Club, telephoned the police between 11 and 11:30 P.M. to report a disturbance involving thirty to forty people. Officers John Bartow and James Winn responded to the call and entered the building, where the defendant was engaged in a struggle with several others on a stairway landing. The defendant said, "You're not gonna f---ing take me," whereupon Officer Winn seized him, took him through the front door of the building, put him up against a parked vehicle, and attempted to place handcuffs on him.

The defendant resisted and a struggle took place, during which Officer Winn went to the ground with the defendant on top of him. Officers Albert Hayford, Jr., and Cardinal Spezzeferro, two of approximately a dozen officers who arrived on the scene, attempted to assist Winn. Officers testified that some members of the crowd, which had swelled substantially in size and moved outside, actively impeded the efforts of the police. Winn and Hayford testified that, after Hayford pulled the defendant off Winn, the defendant struck Hayford in the face with his fist. Spezzeferro testified that he took out his nightstick and attempted to hit the defendant on his body, and that during the struggle he inadvertently struck the defendant on the head. The three officers eventually subdued the defendant, handcuffed him, and placed him in a police van. Sergeant Michael White, who arrived on the scene at about that time, observed that the defendant was injured and ordered him taken to a hospital.

The defense called the defendant's father, his sister, other witnesses of the events, and an orthopedic surgeon who testified that the defendant had suffered a ruptured spinal disc. The defendant testified that, when the police arrived, he had been attempting to take his father to a hospital for treatment of a hand injured in a fan while his father was trying to calm his guests. When the police entered the building, they forcibly moved the defendant to the street, handcuffed, and beat him. He was punched by several officers and hit on the head with a nightstick many times. After he arrived at the hospital, he was hit repeatedly by another police officer while they were alone in the emergency room, and he was tied down when he attempted to get up and go home. Witnesses called by the defendant corroborated various aspects of his version of the night's events.

On rebuttal, two nurses who were on duty that night in the emergency room of the Berkshire Medical Center testified that the defendant was "in a very excited state" while at the hospital, "striking out . . . violently," "struggling," "thrashing and fighting," and "very abusive." The charge

nurse testified that she asked the police to help restrain the defendant because he would not cooperate with the efforts to treat him.

1. *Judge's failure to disqualify himself.* The trial judge, who did not preside at the defendant's bench trial, was a practicing attorney sitting as a special justice. See G. L. c. 218, § 6A.[1] Prior to trial, the defendant moved to have the judge disqualify himself because he had represented a party in a civil suit against the defendant's sister approximately four years previously. The judge noted for the record that the suit was terminated by agreement of the parties and that he did not recall ever having met the defendant's sister. He questioned her in the presence of counsel about that case, and denied the defendant's motion. On his own motion, the judge then apprised both counsel that he had recently represented one of the Commonwealth's principal witnesses, Sergeant Spezzeferro.[2] The judge examined the officer and evidently also allowed defense counsel to put questions to him. For the record, the judge commented that he thought there were no other

---

[1] By St. 1975, c. 862, § 6, the Legislature added G. L. c. 218, § 6A, which provides in material part: "(a) Any special justice of a district court holding office on January first, nineteen hundred and seventy-six may . . . certify in writing to the administrative justice for the district courts that upon said certificate becoming effective said special justice shall devote full-time during ordinary business hours to the duties of his office and shall not engage directly or indirectly in the practice of law. Said certificate shall become effective at such time as the administrative justice . . . may direct, but in no case later than July first, nineteen hundred and seventy-nine , . . . ." G. L. c. 218, § 6A (a), as amended by St. 1978, c. 478, § 174. No question respecting G. L. c. 218, § 6A, is presented by this appeal.

[2] Officer Spezzeferro was promoted to sergeant after the May 31, 1975, incident. The record before us, which contains many gaps because of the apparently faulty tape recording system used at the trial, does not show the nature of the judge's representation of the officer. The defendant's brief avers that the judge represented Spezzeferro in the purchase of a new home approximately six weeks before the trial, that the judge received $300 for his services, and that Spezzeferro, in response to defense counsel's question, said he would seek advice from the judge if he had a legal problem.

judges available to hear this case, but that he would inquire about obtaining another judge if that became necessary. After hearing defense counsel's argument, the judge denied fresh motions for a continuance and for his disqualification, informing defense counsel that, if some other basis developed during trial, the motion for disqualification could be renewed. The defendant urges that the refusal of the judge to disqualify himself was error.

Article 29 of the Massachusetts Declaration of Rights requires that judges be "as free, impartial and independent as the lot of humanity will admit." Under former S.J.C. Rule 3:25, Canon 3 (C)(1), 359 Mass. 842 (1972) (now Rule 3:09, Canon 3 [C][1]), a judge "should disqualify himself in a proceeding in which his impartiality might reasonably be questioned." However, "[n]ot every contention of bias or partiality is entitled to be honored by a judge, or a hearing officer." *Police Comm'r of Boston* v. *Municipal Court of the W. Roxbury Dist.*, 368 Mass. 501, 508 (1975), and cases cited. Bias requiring disqualification must ordinarily arise from an extrajudicial source. See *Kennedy* v. *District Court of Dukes County*, 356 Mass. 367, 379 (1969). In general, the question of disqualification is left to the judge's discretion. *Commonwealth* v. *Coyne*, 372 Mass. 599, 602 (1977), citing *Commonwealth* v. *Leventhal*, 364 Mass. 718, 722 (1974), and cases cited. We have said that, when faced with a question of his impartiality, a judge must "consult first his own emotions and conscience. If he pass[es] the internal test of freedom from disabling prejudice, he must next attempt an objective appraisal of whether this [is] 'a proceeding in which his impartiality might reasonably be questioned.'" *Lena* v. *Commonwealth*, 369 Mass. 571, 575 (1976). Here the judge was careful to explore his past representations on the record, for the benefit and with the apparent participation of trial counsel. These representations appear to have been completely distinct from and unrelated to the pending matter. It is to be assumed from his denial of the motions that the judge was satisfied that he could preside over the proceedings with no danger of prej-

udice. *King* v. *Grace*, 293 Mass. 244, 247 (1936). *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. 571, 587 (1977). See also *Beauregard* v. *Dailey*, 294 Mass. 315, 325 (1936), involving the disqualification of an attorney acting as a master: "It is the general rule in most jurisdictions that the relationship of attorney and client is ordinarily so close and confidential as to be incompatible with the principle that 'no man can be at once the judge and attorney for one of the parties,' . . . and this rule extends to cover cases where the judge is under a general retainer from one of the parties even though the retainer involved issues other than those to be determined in the pending litigation. . . . This general rule of attorney and client relationship is not applicable to an attorney for a party in past litigation involving issues entirely unrelated to pending issues, and in such case there is no disqualification." (Citations omitted.)

The record before us does not hint of partial treatment of the witnesses or of unfairness to the defense during the course of the trial. Nor was the judge the trier of fact. See *Commonwealth* v. *Leventhal*, 364 Mass. 718, 725-726 (1974). It is at least suggestive of no lack of impartiality, and clearly indicative of no prejudice to the defendant, that the jury returned a verdict of not guilty on the graver of the offenses with which the defendant stood charged. The defendant has failed to demonstrate any prejudice, and we perceive none, resulting from the judge's decision to preside at the trial.[3] See *King* v. *Grace*, 293 Mass. 244, 246-247 (1936).

---

[3] The defendant seeks support from *Commonwealth* v. *Hodge*, 386 Mass. 165 (1982) (conflict of interest of defense counsel denied the defendant effective assistance of counsel and entitled him to a new trial without a showing of actual prejudice), and *Commonwealth* v. *A Juvenile (No. 2)*, 384 Mass. 390 (1981) (new trial ordered where defendant's right to a jury of twelve was substantial and actual prejudice was impossible to establish). The defendant's reliance on these cases in misplaced. The judge's decision, in his discretion, not to disqualify himself was not inherently prejudicial to the defendant. The defendant's contention, "[in] the many rulings required during the course of a trial, that the judge may have been swayed by his prior and perhaps future dealings with the

2. *Denial of motions for a mistrial and for a required finding of not guilty.* The judge granted the defendant's pretrial motion to sequester witnesses. Both Commonwealth and defense witnesses were excluded from the courtroom, and were ordered to discuss neither the case nor the specific testimony of any witness until the trial was at an end. During the Commonwealth's case, after three police officers had testified, defense counsel reported to the judge that he had seen several officers, including Officers Hayford and Spezzeferro, who had not yet testified, talking in one of the offices within the court house. He had heard one say, "Our weak spot [is] hitting Gogan." The judge accepted counsel's representation and admonished the police officers out of the jury's presence. The judge denied the defendant's motion for a mistrial and for a required finding of not guilty made at this time. There was no error.

The decision to sequester witnesses is within the trial judge's discretion. See *Commonwealth* v. *Watkins,* 373 Mass. 849, 851 (1977); *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 748 (1975), and cases cited. "It is also within the judge's discretion to admit or exclude the testimony of witnesses who have violated sequestration orders." *Commonwealth* v. *Jackson,* 384 Mass. 572, 582 (1981), and cases cited. The chief purpose of sequestering witnesses it to prevent the commission of perjury. *Id.* Here the judge elected to administer a strong warning to the violators and not to abort the trial. In denying the motions, the judge observed, "[T]his case was tried once before in the District Court. I assume that the statements and the evidence in the case are probably going to be given the second time around. That if such a statement were in fact made it would probably be

---

witness [Spezzeferro] in making those rulings, violates due process," does not rise above speculation.

Nor do we accept the suggestion that the judge's questioning of some defense witnesses was demonstrative of his bias. The episodes of questioning were few and did not display a belief in the defendant's guilt. See *Commonwealth* v. *Festa,* 369 Mass. 419, 422-423 (1976); *Commonwealth* v. *Hanscomb,* 367 Mass. 726, 730 (1975).

made from the witness stand."[4]  In these circumstances, it was not error for the judge to refuse to declare a mistrial for an apparent violation of his sequestration order.[5]  See *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 223 (1974).

The defendant claims that the refusal of the judge to conduct a voir dire of the police officers after the violation deprived him of an opportunity to prove prejudice, and that he was prevented from cross-examining the next police witness as to the conversation among the officers.  The record does not support this contention.  The judge, in a lengthy conference with defense counsel, stated that he would permit cross-examination for the purpose of showing inconsistent statements but did not want the jury made aware of a possible violation of the court's sequestration order.  The record shows that defense counsel was permitted to put direct questions to the next police witness with respect to the time and place of the conversation, who was present, and whether or not the pending case was discussed.  No interference with the defendant's right to cross-examine this witness or other police officers is revealed, nor is any prejudice to him shown.  See *Commonwealth* v. *Watkins*, 373 Mass. 849, 851 (1977).

3. *Admission in evidence of defendant's hospital records.* The defendant urges that a certified hospital record relating to his treatment at the Berkshire Medical Center was improperly admitted if submitted under G. L. c. 233, § 79, or as an admission by the defendant.  The record does not show on what ground the document was admitted.  Since

---

[4] The substance of the out-of-court remark reported by defense counsel, that the defendant had been hit by the police, was testified to by Officer Spezzeferro later in the trial.

[5] The defendant's motion for a required finding of not guilty was inappropriate.  See Mass. R. Crim. P. 25, 378 Mass. 896 (1979).  The decision in *Commonwealth* v. *Manning*, 373 Mass. 438 (1977), relied on by the defendant, is inapposite.  There, misconduct by Federal law enforcement officers, who attempted to subvert the defendant's relationship with his attorney, required a dismissal of the complaints.

we conclude that the hospital record was admissible under G. L. c. 233, § 79, as the Commonwealth contends, the precise ground on which it was admitted need not be addressed. See *Green* v. *Richmond,* 369 Mass. 47, 59 (1975), quoting *Whipple* v. *Rich,* 180 Mass. 477, 479 (1902) ("[E]vidence admissible for one purpose, if offered for that purpose in good faith, is not made inadmissible by the fact that it could not be used for another with regard to which it has a tendency to influence the mind"); *Commonwealth* v. *Franks,* 359 Mass. 577, 579 (1971).

Pursuant to G. L. c. 233, § 79, as amended through St. 1974, c. 225, "[r]ecords kept by hospitals . . . under [G. L. c. 111, § 70,] shall be admissible . . . as evidence . . . so far as such records relate to the treatment and medical history of such cases." The statute operates to provide an exception to the hearsay rule with respect to facts in the records relating to treatment and medical history. *Bouchie* v. *Murray,* 376 Mass. 524, 527 (1978). It was "enacted primarily to relieve the physicians and nurses of public hospitals from the hardship and inconvenience of attending court as witnesses to facts which ordinarily would be found recorded in the hospital books." *Leonard* v. *Boston Elevated Ry.,* 234 Mass 480, 482 (1920). See *Commonwealth* v. *Bohannon,* 385 Mass. 733, 749 (1982). Our cases have interpreted the statute liberally. *Commonwealth* v. *Franks,* 359 Mass. 577, 579 (1971). "Despite the provision in G. L. c. 233, § 79, that references 'to the question of liability' are not made admissible by the section, the section has been given 'liberal interpretation.' . . . A record, 'which relates directly and mainly to the [treatment and] medical history of the patient, should be admitted, even though incidentally the facts recorded may have some bearing on the question of liability.'" (Citations omitted.) *Commonwealth* v. *Atencio,* 12 Mass. App. Ct. 747, 751 (1981), quoting *Leonard* v. *Boston Elevated Ry., supra* at 483.

Here, the medical record carried the notations: "Pt. intoxicated; tied to stretcher — fight — very belligerent — violent." The defendant acknowledges that we have held

that an observation about alcohol on the patient's breath is admissible as part of a hospital record. *Cowan* v. *McDonnell,* 330 Mass. 148, 149 (1953), and cases cited. See *Commonwealth* v. *Atencio, supra,* citing *Cowan* v. *McDonnell, supra* (no error in prosecutor's reference, in closing argument in trial for operating a motor vehicle while under the influence of liquor, to hospital record which noted that there was a "strong odor of alcohol" about the defendant). The other notations were related to administering treatment so that "[a]ny hospital staff member would rely on these entries in treating the patient, even though the matters did not directly relate to the exact illness for which the patient entered the hospital." *Commonwealth* v. *Perry,* 385 Mass. 639, 641-642 (1982) (defendant permitted to read to jury notations on hospital record that his wife had suicidal thoughts and was found in hospital bed, drowsy, with a lit cigarette). The certified hospital record here was thus admissible in the judge's discretion under G. L. c. 233, § 79, "without need for, and despite the absence of, testimonial corroboration." *Commonwealth* v. *Copeland,* 375 Mass. 438, 442 (1978). Cf. *Commonwealth* v. *Hubbard,* 371 Mass. 160, 175 (1976). Additionally, we note that the defendant testified that he had had drinks at the Elks Club, and the two nurses in attendance at the emergency room testified that his behavior was so uncooperative as to require that he be restrained. Any reference in the hospital record to liability was not only incidental to treatment, but it added nothing to other evidence presented. See *Commonwealth* v. *Concepcion,* 362 Mass. 653, 656 (1972); *Commonwealth* v. *Cutter,* 9 Mass. App. Ct. 876, 877 (1980).

*Judgment affirmed.*