Commonwealth *v.* Dane Entertainment Services, Inc.

COMMONWEALTH *vs.* DANE ENTERTAINMENT SERVICES, INC.

Suffolk.    May 11, 1984. — August 3, 1984.

Present: BROWN, CUTTER, & KASS, JJ.

*Judge. Practice, Criminal,* Disqualification of judge, Instructions to jury. *Obscenity,* Expert testimony. *Witness,* Expert: qualification. *Search and Seizure,* Motion picture film, Affidavit. *Evidence,* Obscenity, Cross-examination.

The judge at the jury trial of a complaint charging dissemination of an obscene motion picture film was not, in the circumstances, required to disqualify himself on his own motion as the result of allegedly biased remarks he made on the occasion, one year earlier, when he found the same defendant guilty of disseminating two other obscene films. [447-451]

At the trial of a complaint charging dissemination of an obscene film, the judge's refusal to allow testimony by the defendant's prospective expert witness as to the artistic value of the film did not create a substantial risk of a miscarriage of justice inasmuch as the witness was permitted to testify extensively about the film's literary value. [451-452]

At a criminal trial no prejudicial error attended the judge's allowing the defendant's expert witness to testify on cross-examination that the defendant had paid him for his services in an earlier case. [452]

At the trial of a complaint charging dissemination of an obscene film, there was no error in the judge's instructions to the jury with regard to the definition of obscenity. [452-453]

There was no merit to various contentions by a defendant, charged with disseminating an obscene film, that a judge had erred in denying its motion to suppress from evidence certain items seized from a theatre pursuant to a search warrant. [453-454]

COMPLAINT received and sworn to in the Chelsea Division of the District Court Department on July 9, 1981.

The case was tried before *Stanziani,* J.

*Lee Carl Bromberg (Benjamin J. Naitove* with him) for the defendant.

*Paul J. McCallum,* Assistant District Attorney, for the Commonwealth.

KASS, J. Dane Entertainment Services, Inc. (Dane), was convicted by a jury of six of disseminating an obscene film, "Small Town Girls," in violation of G. L. c. 272, § 29, as appearing in St. 1974, c. 430, § 9, and fined $5,000. The defendant contends that the trial judge should have disqualified himself because of his personal bias against the defendant and that the alleged bias infected the trial. The defendant also challenges certain evidentiary rulings, the charge to the jury, the judge's denial of a motion to suppress, and the constitutionality of G. L. c. 272, §§ 29 and 31.

1. *The judge's failure to disqualify himself.* The defendant asserts that the trial judge should have disqualified himself sua sponte because of statements the judge had made a year earlier when he found Dane guilty (at a bench trial) of disseminating two other obscene films. At the time the judge made those previous statements, complaints stemming from the dissemination of additional obscene films, including the instant charge relating to "Small Town Girls," were pending before the judge in Chelsea District Court. In one of those statements, all of which were reported in the press, the judge expressed frustration over the necessity of holding a separate trial as to each movie which was the subject of a complaint. As reported in the Chelsea Record newspaper on September 17, 1981, the judge had stated, "It's an ongoing thing. I feel it should be stopped. It just wastes the court [*sic*] time to try film one, two, three, four and five and the corporation goes on making a lot of money." On October 7, 1981,[1] the Chelsea Record reported that in finding the defendant guilty on two charges of disseminating obscene films, the judge characterized the films as "pure filth" and a "sick portrayal of sex," ordered them "burned in the garbage can where they belong," and stated, "I regret that I have no power to close the theatre down."

---

[1] The defendant also refers us to a remark quoted in the October 1, 1981, Chelsea Record which, because it essentially repeats the statement quoted on September 17, 1981, we need not address separately. Nor do we look to the judge's statements made and published after the instant trial in examining the possibility of bias prior to and during the trial.

Prior to presiding at the trial in the instant case, the judge on his own motion noted that a year earlier he had heard similar charges against the defendant.[2] A court clerk remarked, "You cannot sit on this case, Judge." The judge considered the question over the Thanksgiving weekend and the following Monday he indicated that he would go forward with the trial, since the earlier proceeding involved different films. While defense counsel "expressed concern" about the judge's possible bias, he did not ask the judge to recuse himself.

Not until after the trial did the challenged statements come to defense counsel's attention, and he raised the matter in a motion for a new trial. That belated discovery could scarcely be considered as new matter bearing on the recusal issue. The judge's comments had been widely published, could scarcely have escaped the notice of the defendant, and were, thus, available to the defendant's lawyer. Cf. *Commonwealth v. Brown,* 378 Mass. 165, 170 (1979); *Commonwealth v. Markham,* 10 Mass. App. Ct. 651, 653 (1980). In view of the failure of the defendant to move for the judge's recusal at or prior to trial, we could decline to consider the disqualification issue, *Commonwealth v. Davis,* 13 Mass. App. Ct. 179, 187 (1982), but because of institutional considerations, i.e., the integrity of the courts, we consider the question on a "substantial risk of miscarriage of justice" standard, *Commonwealth v. Freeman,* 352 Mass. 556, 564 (1967). What the defendant draws from the judge's 1981 statements is that the judge believed the defendant guilty of the charges then pending, including the one relating to "Small Town Girls," and that the judge was obliged to disqualify himself.

Article 29 of the Massachusetts Declaration of Rights requires that judges be "as free, impartial and independent as the lot of humanity will admit." *Commonwealth v. Leventhal,* 364 Mass. 718, 721 (1974). *Commonwealth v. Campbell,* 5 Mass. App. Ct. 571, 586 (1977). See Note, Disqualification of

---

[2] While none of the discussion concerning the judge's prior involvement appears in the transcript of the trial, we have in the record on appeal the benefit of an affidavit filed by defense counsel in support of a motion for a new trial.

Judges and Justices in the Federal Courts, 86 Harv.L.Rev. 736, 746 (1973). Under the authority of S.J.C. Rule 3:09, Canon 3(C)(1), as appearing in 382 Mass. 811 (1981), "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party . . . ."

Ordinarily, the question of disqualification is left to the discretion of the trial judge. *Commonwealth* v. *Coyne,* 372 Mass. 599, 602 (1977). *Commonwealth* v. *Gogan,* 389 Mass. 255, 259 (1983). That a judge presided in a previous criminal trial involving the same defendant is generally not a ground for disqualification. *Commonwealth* v. *Campbell,* 5 Mass. App. Ct. at 587, and cases cited. Ratner, Disqualification of Judges for Prior Judicial Actions, 3 How. L. J. 228, 245 (1957). When a judge is faced with a question as to his impartiality, he must "consult first his own emotions and conscience. If he pass[es] the internal test of freedom from disabling prejudice, he must next attempt an objective appraisal of whether this [is] 'a proceeding in which his impartiality might reasonably be questioned.'" *Lena* v. *Commonwealth,* 369 Mass. 571, 575 (1976), citing former S.J.C. Rule 3:25, Canon 3(C)(1)(a), 359 Mass. 842 (1972) (now Rule 3:09, Canon 3[C][1][a].)

In the instant case, the judge explained to the parties that he based his decision to proceed on the ground that the charges he had heard in Chelsea involved two other films. The judge's decision to preside at the trial revealed that he was inwardly satisfied that there was no danger of prejudice. *King* v. *Grace,* 293 Mass. 244, 247 (1936). *Commonwealth* v. *Gogan,* 389 Mass. at 259-260. *Commonwealth* v. *Campbell,* 5 Mass. App. Ct. at 587. Turning to the question whether there was the outward appearance of impartiality, we first examine those remarks quoted in the September 17, 1981, Chelsea Record in which the judge said, "I feel it should be stopped." We do not draw from that comment the conclusion which the defendant does: that it manifests the judge's belief that the defendant was guilty of the charges yet to be tried, including the instant charge relating to "Small Town Girls." Rather, the statement, taken in

context, suggests that the judge objected to the prosecution of each film on an individual basis. With regard to those remarks made by the judge at the disposition phase of the earlier trial and quoted in the October 7, 1981, Chelsea Record, the judge acquired his opinion of the films in his judicial role and not from an extrajudicial source. This factor weighs heavily in favor of the judge's decision not to disqualify himself. *Commonwealth* v. *Leventhal,* 364 Mass. at 722. *Lena* v. *Commonwealth,* 369 Mass. at 574-575. *Commonwealth* v. *Gogan,* 389 Mass. at 259.

This case presents another instance in which a judge's effusions at the disposition phase of one trial have reverberated in an unrelated proceeding. See, e.g., *Commonwealth* v. *Hanscomb,* 367 Mass. 726 (1975); *Lena* v. *Commonwealth, supra,* at 573. It is evident that a year before the instant trial the judge felt strongly about the two films which he had then found to be obscene, but it is equally evident that, in terms of his usefulness in later cases, it would have been better had he not given voice to his sentiments, for that is all they were. On balance, however, we are of opinion that the tests of inward and outward propriety were met. The inward test, as we have observed, is largely up to the trial judge. As to the outward test, it cannot easily be argued that the appearance of bias was obvious when defense counsel took no discernible notice of it. It is also significant that the judge was not the trier of fact in the instant case. *Commonwealth* v. *Gogan,* 389 Mass. at 260.

Review of the record does not support the defendant's claim that the trial was contaminated with bias. Compare *Commonwealth* v. *Gogan, supra* at 260. There was no hint of unfairness in the judge's opening comment to prospective jurors that this case "has to do with obscenity." The judge's other statement during empanelment challenged by the defendant was to the effect that he did not want a lone female to sit on the jury because "something might happen." This remark, while inappropriate, did .not, as the defendant contends, bespeak the judge's predetermined belief in the defendant's guilt. Without enumerating every challenged statement or ruling by the trial judge with respect to the testimony of the defendant's expert,

we do not think that the judge's conduct toward the witness displayed partiality to the jury.

2. *Restriction of the expert's testimony as to the literary value of the film.* The defendant sought to qualify Charles White, an English professor at Southeastern Massachusetts University who has taught a film studies course since 1970, as an expert on both the literary and artistic values of "Small Town Girls." White testified during a voir dire that he received his doctoral degree in English from Harvard University in 1967 and that he has taught courses in literature at various universities for approximately the last twenty years. He educated himself about films by viewing hundreds of them, by reading the current film-related literature, and by teaching his course on film studies. He also wrote reviews of films for the school newspaper. Following the voir dire, the trial judge refused to qualify White as an expert on the artistic value of "Small Town Girls," but did permit him to testify concerning the literary value of the film. The defendant acquiesced in that limitation, no doubt because for purposes of the trial any distinction between literary and artistic value was a distinction without much difference. Not until it moved for a new trial, a motion the judge denied without findings after hearing, did the defendant assert that error attended the exclusion of opinion as to artistic value. Once again, therefore, the defendant is remitted to review on a "substantial risk of a miscarriage of justice" standard. Compare *Commonwealth* v. *Buckley,* 17 Mass. App. Ct. 373, 374 (1984). As to the importance to the defense of qualified expert testimony in an obscenity prosecution, see *Commonwealth* v. *United Books, Inc.,* 389 Mass. 888, 895 (1983).

In *Commonwealth* v. *United Books, Inc.,* 389 Mass. at 895-897, exclusion of proffered expert testimony about a film's artistic (as well as social, political, and scientific) value resulted in reversal. In that case a Clark University professor taught biology and English, including a course on erotic art, conducted an investigation into local erotic art, and had read literature on pornography. While White's expertise in the instant case was not in the field of erotic art, his credentials in the study of film were substantially as good and entitled the defendant to

have him testify as to the artistic value of "Small Town Girls." Unlike the *United Books* case, however, where the judge excluded all of the expert's testimony, the defendant's expert in the instant case was permitted to testify extensively about the film's literary value. Literary and artistic values are so intertwined, so far as analysis of a film is concerned, that any error caused by the exclusion of the witness's testimony as to artistic value was harmless beyond a reasonable doubt. Certainly the limited exclusion did not create a substantial risk of a miscarriage of justice.

3. *Cross-examination of the expert.* In an attempt to evoke evidence of bias from the defendant's expert witness, the prosecutor elicited on cross-examination that the witness had worked with the defense attorney on an earlier case. Although the witness could not recall the name of the defendant in that case, the witness was allowed to answer, over objection, that he had been paid for his services as an expert by Dane, the defendant in this case. The defendant argues that the jury could infer from that answer that the defendant was convicted previously of identical charges. It was equally inferable that the defendant had merely been embroiled in a similar controversy before and had not been convicted. Any error which may have attended the isolated reference was harmless. Cf. *Commonwealth* v. *Jackson,* 388 Mass. 98, 106 (1983).

4. *The charge to the jury.* The defendant alleges several errors in the judge's charge, to most of which it failed to object at trial. There was no error.

The judge did not err when he responded to the jury's request for the definition of obscenity by prefacing and concluding his answer with the instruction that "the First Amendment does not mean everything goes." See *Miller* v. *California,* 413 U.S. 15, 29 (1973). *Commonwealth* v. *United Books, Inc.,* 389 Mass. at 900-901. Nor did this part of the instruction become error by the judge's refusal to give the jury the defendant's requested instruction on the positive protections of the First Amendment. *Commonwealth* v. *United Books, Inc., supra.* See *Commonwealth* v. *Dane Entertainment Servs., Inc. (No. 1),* 389 Mass. 902, 916 (1983). The judge adequately and cor-

rectly instructed the jury, both in the main body of his charge and in his response to the jury's question, on the statutory elements of obscenity.

The judge did not err when, in the context of his otherwise proper response to the jury's request for the definition of obscenity, he stated, "[I]s this what the Commonwealth wants and everyone can see it . . . .?" This statement, to which no objection was made at trial, was sandwiched between two proper recitations of the statutory elements of the offense.

We need not respond to other claims of error in the charge because no objection about any of the points urged on appeal was made at trial.

5. *Motion to suppress.* None of the defendant's arguments that the judge wrongfully denied its motion to suppress items seized from the theatre, based on alleged Fourth Amendment violations, has merit. The defendant claims for the first time on appeal that the police, who entered the theatre to view the film without paying the price of admission, were wrongfully on the premises. Thus, the argument goes, all of the information which formed the substance of the affidavit was obtained as a result of the unlawful entry. Because the defendant did not raise this question of law at the hearing on the motion to suppress before the judge, it cannot be raised on appeal. *Commonwealth* v. *Cote,* 386 Mass. 354, 358 n.6 (1982). *Commonwealth* v. *Sherman,* 14 Mass. App. Ct. 971 (1982), rev'd on other grounds, 389 Mass. 287 (1983). Moreover, we note that the two cases offered by the defendant to support this argument, *Commonwealth* v. *Forde,* 2 Mass. App. Ct. 425 (1974), *S.C.,* 367 Mass. 798 (1975), and *Commonwealth* v. *A Juvenile (No. 1),* 6 Mass. App. Ct. 106 (1978), are inapposite.

The defendant next argues that the police exceeded the scope of the search warrant, which authorized the seizure of "Small Town Girls" and "all records relating to the production, manufacture [and] distribut[ion] . . ." of the film, by seizing a wall poster for another movie showing in the same theatre. As in *Commonwealth* v. *Dane Entertainment Servs., Inc. (No. 1),* 389 Mass. at 908, which involved a similar affidavit and in

which police seized a wall poster advertising the *same* movie as that named in the affidavit, we need not decide if the police exceeded the scope of the warrant. Where the movie "Small Town Girls" was shown to the jury in its entirety, and where there is no suggestion that the poster for the other movie displayed sexual conduct of any type different from that revealed in "Small Town Girls," any error in the admission of the poster was harmless beyond a reasonable doubt.

The defendant asserts that the twenty-page affidavit for the search warrant, consisting of a transcript of a tape made by one officer describing the film scene by scene as he viewed it, was insufficient because it failed to address the film's lack of artistic, literary, social, or political value. This argument was rejected in *Commonwealth* v. *Dane Entertainment Servs., Inc. (No. 1)*, 389 Mass. at 907.

6. *Constitutional challenges.* The defendant argues that G. L. c. 272, §§ 29 and 31, are unconstitutional because they deprived the defendant of its rights under the First and Fourteenth Amendments to the United States Constitution, and under arts. 1 and 16 of the Massachusetts Declaration of Rights. Specifically, the defendant contends that the obscenity statute impermissibly shifts the burden of proof onto the defendant, contains an unconstitutionally vague scienter requirement, and impermissibly restricts the defendant's exercise of its right to free speech. These questions have been settled in favor of the statute's constitutionality. *Commonwealth* v. *United Books, Inc.,* 389 Mass. at 893-894. *Commonwealth* v. *Dane Entertainment Servs., Inc. (No. 1)*, 389 Mass. at 904-906. See *Roth* v. *United States,* 354 U.S. 476, 485 (1957).

*Judgment affirmed.*