LISE PARENTEAU & others[1] *vs.* KENNETH JACOBSON & another.[2]

No. 89-P-985.

Suffolk. November 19, 1990. - February 11, 1992.

Present: BROWN, SMITH, & JACOBS, JJ.

*Judge. Practice, Civil*, Disqualification of judge.

Where a judge believed that his impartiality might reasonably be questioned if he presided at the jury-waived trial of a civil action, he was required to allow a party's motion that he disqualify himself; it was an improper exercise of discretion for the judge to take into account the effect that his disqualification might have on the progress of the litigation and to order a jury trial as a substitute for allowing the disqualification motion. [103-104]

CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on November 21, 1984.

The case was tried before *Patrick J. King*, J.

*Bruce A. Kraft* for the defendants.

*Paul S. Kaplan* for the plaintiffs.

SMITH, J. In 1984, the plaintiffs, Pamela Howland, Lise Parenteau, Ellen Prihodko, and Ann Taylor, brought an action in the Boston Housing Court against the defendants, S.M.A., Inc., and its president, Kenneth Jacobson. They sought damages for (1) breach of the implied warranty of habitability, (2) breach of the covenant of quiet enjoyment, (3) negligent failure properly to secure the premises, (4) violations of G. L. c. 186, § 15B (failure to return security deposits), and (5) violations of G. L. c. 93A. The defendants' answer denied liability. Neither party requested a jury trial.

[1]Pamela Howland, Ellen Prihodko, and Ann Taylor.
[2]S.M.A., Inc.

The matter was marked for trial, jury waived, to be held on September 4, 1987.

On August 17, 1987, the judge assigned to preside at the trial allowed the defendants' attorney to withdraw from the case. The defendants' new counsel filed a motion to continue the trial to another date. He also moved to have the judge recuse himself and requested that the Administrative Justice of the Housing Court specially assign a judge to preside at the trial. Both motions were denied on August 26, 1987. Over the defendants' objections, the judge ordered the plaintiffs' complaint, including the c. 93A claims, to be tried by a jury. The judge did not submit the issue of reasonable attorney's fees to the jury.

During the trial, the judge granted a directed verdict in favor of Jacobson on the plaintiffs' claims of breach of quiet enjoyment and breach of warranty of habitability. At the conclusion of the trial, the judge granted a directed verdict in favor of Howland, Prihodko, and Taylor against each defendant on the G. L. c. 186, § 15B, claim; total damages on that claim were in the amount of $2,572.81 plus $600 in attorney's fees.

The jury returned the following verdicts:[3] (1) finding for Howland, Prihodko, and Taylor against S.M.A., Inc., on the c. 93A claim in the amount of $10,080; (2) finding in favor of Howland, Prihodko, and Taylor against Jacobson pursuant to the c. 93A claim in the amount of $10,080; (3) finding in favor of Parenteau pursuant to her c. 93A claim against S.M.A., Inc., in the amount of $3,120; (4) finding in favor of Parenteau with respect to her c. 93A claim against Jacobson in the amount of $3,120; (5) finding in favor of Parenteau against S.M.A., Inc., with respect to her negligence claim in the amount of $800; (6) finding in favor of Jacobson with respect to Parenteau's negligence claim.

After the verdicts, the defendants filed motions (1) to set aside the verdicts against Jacobson on the c. 93A claims, or to hold that the defendants are jointly and severally liable

---

[3]The dollar amounts that follow in the text reflect the award of treble damages on the c. 93A claims.

and not independently liable, (2) for a new trial, and (3) for the plaintiffs to remit damages. The judge allowed a portion of the defendants' motion to hold the defendants jointly and severally liable and denied the other motions. The judge made findings with respect to attorney's fees in regard to the plaintiffs' c. 93A claims and awarded the plaintiffs $18,325 in attorney's fees.

On appeal, the defendants raised numerous issues, including the denial of their recusal motion. Because we hold that the judge's actions in regard to the recusal motion constituted an abuse of discretion, we do not consider the other issues.

Under art. 29 of the Massachusetts Declaration of Rights, judges are to be "as 'free, impartial, and independent as the lot of humanity will admit.' " *Commonwealth* v. *Leventhal,* 364 Mass. 718, 721 (1974). "Ordinarily, the question of disqualification is left to the discretion of the trial judge." *Commonwealth* v. *Dane Entertainment Servs., Inc.,* 18 Mass. App. Ct. 446, 449 (1984). *Care & Protection of Martha,* 407 Mass. 319, 329 n.10 (1990). "[A]n abuse of that discretion must be shown to reverse a decision not to allow recusal." *Haddad* v. *Gonzalez,* 410 Mass. 855, 862 (1991).

When confronted with a recusal motion, a "judge [must] consult first his own emotions and conscience" to ascertain if he is free from disabling bias or prejudice. *Haddad* v. *Gonzalez, supra,* quoting from *Lena* v. *Commonwealth,* 369 Mass. 571, 575 (1976). If the judge passes the internal test of freedom from disabling prejudice, he must next "attempt an objective appraisal of whether this was a proceeding in which 'his impartiality might reasonably be questioned.' " *Haddad* v. *Gonzalez, supra,* quoting from S.J.C. Rule 3:09, Canon 3 (C)(1), 382 Mass. 811 (1981). Under the rule, "[c]ircumstances where a judge's impartiality might reasonably be questioned include instances where the judge 'has a personal bias or prejudice concerning a party . . . .' " *Id.,* quoting from S.J.C. Rule 3:09, Canon 3 (C)(1)(a).

1. *The defendants' motion.* In their recusal motion, the defendants stated that Jacobson owned many residential properties in Boston and, in his capacity as landlord, had often appeared as a party and as a witness in the Boston Housing Court. According to the defendants, Jacobson's credibility as a witness had been questioned numerous times over the years by the trial judge and by the other Housing Court judges. The defendants claimed that the trial judge's prior statements about Jacobson's credibility reflected long-standing bias and prejudice against Jacobson and that the judge should disqualify himself under S.J.C. Rule 3:09, Canon 3 (C)(1)(a).

2. *The hearing on the motion.* At the hearing on the defendants' motion, the judge observed that it was not necessary for him to consult the court records to ascertain if Jacobson had previously appeared before him. He recalled that Jacobson had been a party in a trial that had taken place some three years before.[4] The judge then proceeded to consult his emotions and conscience as required. In doing so, he made the following comments:

> "Now, let me just say, in terms of my examination of my own conscience as to whether or not I have any bias against Mr. Jacobson, *I do recall the first time he appeared before me, and I did observe that he was one of the biggest liars that I'd seen in a long time, based upon the evidence that I'd heard.* However, I come across a lot of people who lie, and sometimes — doesn't mean they're always lying — and sometimes I find they're lying and sometimes I find they're telling the truth, and sometimes people who lie a lot win cases, because in particular cases, based upon the credible evidence, I rule in their favor.
>
> *"But in this case, I do recall Mr. Jacobson, you know, I felt, told some pretty outrageous lies, to say the least.*

---

[4]The same building was involved in the previous trial but not the same apartment.

*So I could understand why he would not want me to
hear the case. And where I have found that he was
such an outrageous liar, you know, I think I probably
should — even though I think I can be fair to him in
the future — I should probably disqualify myself from
hearing his cases.*" (Emphases supplied.)

At that point, plaintiffs' counsel vigorously objected to the
judge's even considering the allowance of the defendants'
recusal motion. He argued that the reason the defendants
wanted the judge to disqualify himself was because the judge
had ruled against them in two previous cases. The judge in-
terrupted plaintiffs' counsel and said, "Well, no, make no
mistake about it; I thought [Jacobson] was one of the big-
gest liars I'[d] seen in a long time." The judge also recalled
other cases in which Jacobson was a party where he (the
judge) had recused himself at the request of Jacobson's law-
yer. The judge made the following comment:

"But, in any event, as to this particular building, where
it's been before me before, *although, you know, I don't
have any bias against Mr. Jacobson, I could see how,
you know, he probably wouldn't have much of a shot if
I were to decide the facts in the case, as a practical
matter.*" (Emphasis supplied.)[5]

---

[5]In a written memorandum he filed on September 11, some three days
after the jury trial commenced, the judge repeated that he had "no per-
sonal bias or prejudice toward . . . Jacobson and finds that [he] is not
required under the Canons of Ethics to allow the [recusal motion]." But in
the same memorandum the judge also stated, "However, normally under
such circumstances, [I], as a matter of discretion, would allow such a mo-
tion and refer the case to another judge for trial."

The judge pointed out that the defendants also objected to the case be-
ing heard by either of two other Housing Court judges and that because of
the late filing of the motion the plaintiffs would be prejudiced by the delay
resulting from assigning a judge from another department. He did not ex-
plain in his memorandum, however, what "circumstances" were present in
this case that normally would call for him to disqualify himself and why
this case was different from those in which he had recused himself.

The judge then considered the effect his disqualification would have on the case. He noted that the matter had been pending a long time and that if he allowed the defendants' motion, he would, in essence, be "put[ting] the case off until probably next year . . . ; if all the judges of the Housing Court recuse themselves and we have to get another judge to hear it, at least it'd be next year before the case is heard."[6]

The judge suggested that "one way of dealing with the problem that I think is fairly easy [is] . . . [w]e'll simply have a jury trial."[7] The defendants objected that they had waived their right to a jury trial. The judge then stated:

> "The question is who's going to decide the facts. There's a concern that I may have a bias, and I can appreciate . . . Jacobson's concern; if I was in his position, I would certainly have the same concern and would be doing

---

[6] We are puzzled by the judge's comment that if he allowed the defendants' motion, "the case [would be put] off until probably next year." Even if all the judges in the Boston Housing Court had recused themselves, the Hampden Division Housing Court judge could have been temporarily assigned to handle the matter, perhaps sometime in September.

Further, the Chief Administrative Justice of the Trial Court could have been requested to assign a judge appointed to a different department of the Trial Court to hear the case. See G. L. c. 211B, § 9. If that procedure had been followed, the matter could have been heard without an unreasonable delay.

In any event, concerns for administrative efficiency are entitled to no weight in determining recusal motions.

[7] He made the following comments as to why a jury trial would meet any objection to his presiding over the trial:

"Hear it before a jury, the same date, same place. The only difference is that the people making the findings of fact will be the jury. If there's any bias on my part towards Mr. Jacobson, which I don't think there will be, it'll be a matter of record; there'll be a recording. That way, Mr. Jacobson's not going to be prejudiced in any way, in terms of any biases that subconsciously I may have against him, and everything — all the facts will be left up to the jury to decide, and that way there's no delay. The case gets heard finally after three years, and no one should have any grounds for complaint, particularly — the only one who would be complaining, I suppose, would be the plaintiff, because there's more time involved to try it before a jury, so it could be more expensive. But if he wins, he gets attorney's fees anyway."

everything I could to get it heard by somebody else. . . ."

The judge denied the recusal motion. The defendants were given a choice of having the cases decided by the judge alone or by a jury; if the defendants wanted a jury trial, they were required to file a request for jury trial by August 27. The defendants sought relief from the judge's order in the single justice session of this court. They stated in response to the Housing Court order relative to recusal and election of a jury trial that "[i]f the Appeals Court . . . does not grant the [d]efendants relief from the [o]rder, the [d]efendants reserve their right at that time to elect a jury trial." The defendants did not file a later request for a jury trial. The defendants argue that the judge's actions in regard to their recusal motion constituted an abuse of discretion. We agree.

The test that must be employed by a judge when confronted with a motion to disqualify himself is simple and straightforward. The judge here was aware of the test and applied it in deciding the motion. As to the first part of the test, it is clear from his comments that the judge was inwardly satisfied that he was free from bias or prejudice toward Jacobson. It is equally clear, however, that in regard to the second part of the test, the judge believed his impartiality might reasonably be questioned if he presided at the jury-waived trial. The record shows that the judge was thus prepared to allow the motion and to disqualify himself as he had done in previous cases involving Jacobson.[8] Before doing so, however, the judge proceeded to consider an additional factor — the *effect* his disqualification would have on the commencement of the trial. As a result of that consideration, he denied the defendants' motion and, instead, ordered a jury trial, concluding that his impartiality could not reasonably be questioned if his only connection with the case was to preside

---

[8]This fact distinguishes the present case from *Haddad* v. *Gonzalez*, 410 Mass. at 860-864, where the issue before the Supreme Judicial Court was whether the trial judge should have recused himself. Here, the record shows that the trial judge believed that he "should probably disqualify" himself.

at the trial. His actions constituted error, because, if, after applying the two-part test of S.J.C. Rule 3:09, Canon 3(C)(1), a judge finds that he should disqualify himself under *either* part, he must allow the motion. Possible consequences of his recusal on the commencement of the trial are immaterial.

Further, a judge cannot partially recuse himself. Once a judge concludes that there are grounds for recusal, he must completely dissociate himself from participating in the case. Ordering a jury trial, as the judge did here, does not substitute for allowance of a recusal motion. Even if he is not the fact finder, a judge presiding at a jury trial performs important functions. See *Commonwealth* v. *Wilson*, 381 Mass. 90, 118 (1980), quoting from *Whitney* v. *Wellesley & Boston St. Ry.*, 197 Mass. 495, 502 (1908) (the judge's role at *any* trial is to be "the directing and controlling mind at the trial, and not a mere functionary to preserve order and lend ceremonial dignity to the proceedings"). Obviously, during the course of a jury trial, a judge by exercising his discretion on various matters makes important decisions which may affect the verdicts returned by the jury. Therefore, a courtroom has no place for a judge whose impartiality in a matter may be reasonably questioned, even if he is not the fact finder. We vacate the judgments and remand the case to the Housing Court for a new trial.

*So ordered.*