# DECISIONS

### OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

COMMONWEALTH *vs.* MORGAN RV RESORTS, LLC, & others[1]
(and five companion cases[2]).

No. 13-P-119.

Suffolk. May 23, 2013. - July 9, 2013.

Present: CYPHER, KAFKER, & SULLIVAN, JJ.

*Judge. Practice, Civil,* Disqualification of judge.

This court concluded that a Superior Court judge who sued her former law firm for unpaid compensation and lost should have recused herself from cases involving that law firm, four years after the Supreme Judicial Court decided her case, where, given the protracted litigation, the judge's personal involvement in the lawsuit, the amount at stake, and the judge's inconsistent rulings on prior recusal motions, an objective appraisal of whether these cases were proceedings in which her impartiality might reasonably be questioned compelled the conclusion that recusal was warranted. [8-16]

---

[1]Peters Pond RV Resort, Inc.; Ideal Private Resorts, LLC; Robert Moser; and Carmel Gilberti.

[2]Penn-America Insurance Company *vs.* Legend Fire Protection & others; Diane Flynn *vs.* Boston Housing Authority; Lucretia Deeran *vs.* Aysha Hameed & others; Mae Powers *vs.* Boston Housing Authority; and Mark Capozzoli *vs.* Waterford Village LLC & another.

CIVIL ACTION commenced in the Superior Court Department on August 22, 2011.

A motion for recusal was heard by *Elizabeth M. Fahey*, J.

CIVIL ACTION commenced in the Superior Court Department on February 17, 2012.

A motion for recusal was heard by *Elizabeth M. Fahey*, J.

CIVIL ACTION commenced in the Superior Court Department on December 14, 2010.

A motion for recusal was heard by *Elizabeth M. Fahey*, J.

CIVIL ACTION commenced in the Superior Court Department on July 31, 2009.

A motion for recusal was heard by *Elizabeth M. Fahey*, J.

CIVIL ACTION commenced in the Superior Court Department on March 3, 2011.

A motion for recusal was heard by *Elizabeth M. Fahey*, J.

CIVIL ACTION commenced in the Superior Court Department on January 5, 2012.

A motion for recusal was heard by *Elizabeth M. Fahey*, J.

Leave to prosecute interlocutory appeals was allowed in the Appeals Court by *Kafker*, J., and *Sullivan*, J.

*Christa A. Arcos* (*Scott D. Burke* with her) for Carmel Gilberti.

*Jonathan B. Engel*, Assistant Attorney General (*Mychii Snape*, Assistant Attorney General, with him) for the Commonwealth.

KAFKER, J. The issue presented is whether a judge who sued her former law firm for unpaid compensation and lost should have recused herself from cases involving that firm, four years after the Supreme Judicial Court decided the case. Applying the two-part test set forth in *Lena* v. *Commonwealth*, 369 Mass. 571, 575 (1976), the judge concluded that she held no actual bias, and that no reasonable person would question her impartiality. We agree that there is no basis for recusal on the grounds of actual bias. However, given the protracted litigation, the judge's personal involvement in the lawsuit, the amount at stake, and the judge's inconsistent rulings on prior recusal motions, "an objective appraisal of whether this was 'a proceeding in which [her] impartiality might reasonably be questioned' " compels the conclusion that recusal was warranted. *Ibid.*, quoting from S.J.C. Rule 3:25, Canon 3(C)(1)(a), 359 Mass. 841

(1972). Accordingly, we reverse the judge's orders denying recusal and remand these consolidated cases for further proceedings.

*Background facts.* The following facts are primarily drawn from the judge's findings and statements on the record, and are undisputed between the parties except where noted. The judge joined the firm now known as Morrison Mahoney LLP (Morrison) as an associate attorney in 1983, and became a partner in 1987. See *Pierce* v. *Morrison Mahoney LLP*, 452 Mass. 718, 720 (2008) (*Pierce*). She left Morrison in 1998 to form a new firm, although she retained financial ties to Morrison for several years thereafter. She became a judge of the Superior Court in 1999.

In 2004, the judge and other former partners in Morrison sued Morrison over disputed partnership compensation.[3] See *id.* at 723-724. While the *Pierce* litigation was pending, the judge personally placed a telephone call to the managing partner of Morrison, and asked him to settle her claim.[4] At the time, both the judge and Morrison were represented by separate counsel. Morrison did not settle.

The trial judge in *Pierce* ruled in favor of the judge and the other plaintiffs, relying on precedent involving an earlier version of the Morrison partnership agreement. *Ibid.* See *Pettingell* v. *Morrison, Mahoney & Miller*, 426 Mass. 253, 256 (1997). The Supreme Judicial Court, having granted direct appellate review, reversed and ordered entry of judgments in Morrison's favor. *Pierce, supra* at 724, 732. The amount of unpaid compensation initially claimed by the judge in *Pierce* was $70,585. *Id.* at 723 n.12. With interest, the amount claimed exceeded $100,000 at the time of the Supreme Judicial Court's decision. See G. L. c. 231, § 6C.

---

[3]Partners at Morrison have described the litigation as "very hotly contested," "very heated," and "vigorously pursued and defended."

[4]Morrison has not argued that the judge acted impermissibly in placing the call. Nonetheless, the managing partner stated that the call made him feel "uncomfortable" even though the "tone [of the call] was cordial and friendly," and another Morrison partner stated "that there was an extreme level of discomfort within the firm."

*The judge's prior practices concerning recusal.*[5] For about ten years after joining the bench, the judge recused herself from any matter in which Morrison represented a party, first due to her prior association with and financial ties to Morrison, and then due to the pendency of the *Pierce* litigation. For the first quarter of 2009, the judge was assigned to a criminal session and heard no cases involving Morrison.

In April and June, 2009, the judge held hearings in two cases in which a party was represented by Morrison. In the first, Desouza *vs.* McKenna, Essex Superior Ct., No. ESCV2006-1427 (Desouza), the judge stated on the record that she had been a partner at Morrison and then had been in litigation with Morrison, but that the "litigation is now over and it's been more than 10 years since I've left. I haven't had a financial arrangement with them in — it's got to be six or seven years anyway." She then stated that she believed she could be fair and impartial and that no reasonable person would question her impartiality, and asked if either side wanted to be heard. Neither side objected. The judge did not mention the size or nature of her claim against Morrison, how recently the litigation had concluded, or her telephone call to the Morrison managing partner. However, other than the telephone call, these facts were described in the Supreme Judicial Court's decision. See *Pierce*, 452 Mass. at 718, 722-724 & n.12, 732.

Similarly, in June, 2009, in Cataldo *vs.* Thomson Club, Inc., Essex Superior Ct., No. ESCV2007-2030 (Cataldo), the judge recognized the defendant's counsel, Scott D. Burke, as having been her partner at Morrison and made a recusal statement on the record. The judge noted that "for years after I left Morrison

---

[5]Our cases, like those of other courts, have not distinguished between the terms recusal and disqualification. See, e.g., *Haddad* v. *Gonzalez*, 410 Mass. 855, 860-863 (1991); *Parenteau* v. *Jacobson*, 32 Mass. App. Ct. 97, 99-100, 102 (1992); *Commonwealth* v. *Zine*, 52 Mass. App. Ct. 130, 133-134 (2001). See also Abramson, Appearance of Impropriety: Deciding When a Judge's Impartiality "Might Reasonably Be Questioned," 14 Geo. J. Legal Ethics 55, 55 n.4 (2000) ("most courts use the terms disqualification and recusal interchangeably"). We use both in this context to signify a judge's action in declining to hear a matter because her impartiality might reasonably be questioned. See *Lena* v. *Commonwealth*, 369 Mass. at 575; Code of Judicial Conduct, S.J.C. Rule 3:09, Canon 3(E), as appearing in 440 Mass. 1319 (2003).

and was appointed I recused myself from anything, because initially I had a financial arrangement with the firm, which was terminated multiple years ago, and then I was in litigation with the firm, which was resolved or decided last year." She stated, "I'm satisfied I can be fair and impartial. . . . I don't think anyone . . . reasonably looking at it would think I'd have difficulty being fair and impartial," and asked if any party wanted to be heard. Burke responded: "Your Honor, I had made an inquiry of the firm and the reaction I got was that you were not recusing yourself from cases involving [Morrison] because of the passage of time, and I'm comfortable with Your Honor hearing this case." The judge asked whether "the firm expressed that they were comfortable with that, too?" Burke answered: "I did not specifically ask — I just asked whether people have had experiences with whether you've been recusing yourself, and the responses I received indicated no." An associate of Burke also indicated he had no objection. The judge did not provide further details on the manner in which the *Pierce* litigation had been "resolved or decided,"[6] or raise the issue of her telephone call with the managing partner.

After the June, 2009, hearing in the Cataldo case, Burke felt "uncomfortable about being in a position to say yes in answer to" what he perceived as a "question [that] was a little bit loaded" concerning the judge's impartiality, and he made further inquiries within the firm. Since that time, Morrison has regularly filed motions to disqualify the judge if the firm realizes that she would be assigned to hear one of its cases. The record appendix includes three such motions in October, 2009, and one in April, 2011, that the judge allowed. Then, between June, 2011, and May, 2012, the judge, without a disqualification motion from Morrison, informally sent cases and motions to other sessions in at least three cases involving Morrison without expressly recusing herself on the record.[7] In another case in May, 2012, Morri-

---

[6]Burke was not a member of Morrison's executive committee, and later explained: "I was not involved in [the *Pierce*] litigation, I didn't supervise it, I wasn't senior enough to participate in that." He stated that he did not learn the particulars of the matter until after the Cataldo hearing.

[7]In one such case, the judge apparently allowed an unopposed motion to file a memorandum in excess of the page limit after she sent a motion to dismiss to another session.

son moved to disqualify the judge, and she sent the case to another session without ruling on the motion. The judge explained in October, 2012, that this was her routine practice: "More recently, for years, I've been sending [cases involving Morrison] to the next session. If I am going to recuse myself, I don't think I should be deciding a motion to disqualify typically without a hearing."

The final case in which the judge recused herself was Cucinotti vs. Construction Mgmt. & Builders Inc., Suffolk Superior Ct., No. SUCV2009-05322 (Cucinotti). Morrison represented a defendant in that case from the beginning, so far as can be discerned from the docket. The judge ruled on a number of apparently unopposed discovery and scheduling motions between May, 2010, and October, 2011. On May 15, 2012, the day of a scheduled pretrial conference, Morrison filed an emergency motion to disqualify the judge; she sent the matter to another session without deciding the motion. However, on October 3, 2012, the judge allowed an assented-to scheduling motion, setting a pretrial conference for October 16, 2012. On October 15, 2012, Morrison filed a renewed motion to disqualify the judge, and on October 16, 2012, she endorsed the motion "I recuse" without further explanation, and again sent the matter to another session.

*The instant cases.* Two days later, on October 18, 2012, the judge held a hearing on a motion to disqualify in Commonwealth vs. Morgan RV Resorts, LLC, Suffolk Superior Ct., No. SUCV2011-03071 (Morgan), that was, apparently for the first time, opposed. Morgan was an action originally brought by the Commonwealth to remediate and enjoin alleged violations of G. L. c. 93A, § 2, by certain lessors of manufactured home sites. Another judge entered a preliminary injunction against the lessors in September, 2011. In November, 2011, the judge held that the lessors were not in compliance with the preliminary injunction. In February, 2012, the Commonwealth filed a complaint for contempt against the lessors. The judge held several hearings over the course of a few months, and the parties ultimately reached an agreement; consequently, in June, 2012, the judge entered a final judgment by consent of the parties (consent judgment). The lessors' attorney, Carmel Gilberti,

was, according to the Commonwealth, bound by the consent judgment.[8]

The Commonwealth, dissatisfied with the defendants' actions subsequent to the entry of the consent judgment, brought a second contempt complaint on August 24, 2012, this time naming not only the lessors as defendants but also Gilberti personally. Gilberti notified her professional liability insurer promptly but, because a contempt action brought by the Attorney General against an attorney "was not a typical matter," the insurer took over a month to make a coverage determination.[9] Morrison was on the insurer's preapproved panel of counsel, and Gilberti stated that she had recently had a positive experience with Morrison in an unrelated case. Gilberti chose two Morrison attorneys as her counsel,[10] and they appeared for her on October 9, 2012. These attorneys, on Gilberti's behalf, brought an emergency motion to disqualify the judge on October 16, 2012.

In the Morgan case, on October 17, 2012,[11] and in two other cases on October 26, 2012,[12] the judge denied Morrison's motions to disqualify in margin notations indicating that she could be fair and impartial and that a reasonable observer would not question her impartiality.[13] Parties represented by Morrison filed timely petitions for interlocutory review pursuant to G. L. c. 231,

---

[8]The consent judgment is not in the record before us.

[9]In the interim, Gilberti represented herself and was also represented by her clients' co-counsel, Michael J. Markoff. Gilberti averred that she "never intended that Attorney Markoff would be [her] permanent counsel in the action," but that he was assisting her "until [her] professional liability carrier responded" to her claim.

[10]The Commonwealth disputes Gilberti's motivation for hiring Morrison, arguing that she was engaged in improper "judge shopping" and general delay tactics. The judge did not address the judge shopping argument, and explicitly declined to consider delay as a factor in denying disqualification.

[11]We note that the judge's handwritten endorsement on the motion is dated October 17, 2012, although the hearing on the motion occurred on October 18, 2012.

[12]The other cases were apparently in the early stages of litigation. The parties have not argued that anything in their facts or procedural histories are pertinent to our present decision.

[13]On October 29, 2012, the judge also entered an order in the Morgan case, which the defendants characterize as reversing a reciprocal discovery order previously entered by another judge, and which precluded the defendants from deposing certain Commonwealth witnesses. The Commonwealth takes the position that the propriety of the discovery order is not properly before this

§ 118, first par. Single justices of this court remanded the three cases to the judge for further explanation and analysis of the factors identified in *Lena* v. *Commonwealth*, 369 Mass. at 575.[14] The judge issued a written decision in the Morgan case as well as substantially identical decisions in the other two cases.[15] She concluded that a reasonable observer would not question her impartiality because approximately four years had passed since the conclusion of the *Pierce* litigation, and because "fully informed" Morrison attorneys in the Desouza and Cataldo cases in 2009 had not objected to her participation. As to her divergent treatment of Morrison's disqualification motions (including recusing herself in the Cucinotti case a few days earlier), the judge stated only that "[u]pon receiving an opposition in the instant case . . . , I analyzed the merits of the issue further." After the judge's written decisions in the three cases were filed in this court, the single justices consolidated them, along with three other cases, see note 15, *supra*, and referred the matter to a full panel for disposition. See *Wojcik* v. *Boston Herald, Inc.*, 60 Mass. App. Ct. 510, 513 n.3 (2004). Cf. *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 389 (2004).

*Discussion.* According to art. 29 of the Massachusetts Declaration of Rights, judges must "be as 'free, impartial and independent as the lot of humanity will admit.' " *Commonwealth*

court. We are unable to determine the full effect or reasoning of the judge's order, as her handwritten endorsement incorporates by reference part of the Commonwealth's memorandum in support of its motion for a protective order, and only the first page of that memorandum appears in the record.

[14]Noting that the parties had made reference to certain materials that had not been before the judge, the single justices also stated that "[o]n remand, it is the litigant's obligation to present all factual and legal arguments to the trial judge for her consideration in the first instance." After remand, the judge refused to consider additional facts or affidavits, reasoning that "[w]here the issue on appeal is whether I abused my discretion in denying the motion to disqualify after the 10/18/12 hearing, the parties are limited to the factual record as of that hearing." We need not determine the propriety of this ruling because we discern nothing material to our decision in the additional evidence proffered, other than court dockets, orders, and transcripts subject to judicial notice. See *Jarosz* v. *Palmer*, 436 Mass. 526, 530 (2002), and authorities cited; *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 69 n.9 (1997); Mass. G. Evid. § 201(c) (2013).

[15]The judge has also incorporated the Morgan decision by reference in denying subsequent motions to disqualify by Morrison in three additional cases.

v. *Leventhal*, 364 Mass. 718, 721 (1974), quoting from *Thomajanian* v. *Odabshian*, 272 Mass. 19, 23 (1930). Thus, judges must "hold the balance nice, clear and true," free of bias and prejudice. *Aetna Life Ins. Co.* v. *Lavoie*, 475 U.S. 813, 825 (1986), quoting from *Ward* v. *Monroeville*, 409 U.S. 57, 60 (1972). Additionally, actual impartiality alone is not enough. "Our decisions and those of the Supreme Judicial Court have commented often and in a variety of contexts on the importance of maintaining not only fairness but also the appearance of fairness in every judicial proceeding." *Adoption of Tia*, 73 Mass. App. Ct. 115, 122 (2008). In order to preserve and protect the integrity of the judiciary and the judicial process, and the necessary public confidence in both, even the appearance of partiality must be avoided. Cf. *In re Murchison*, 349 U.S. 133, 136 (1955), quoting from *Offutt* v. *United States*, 348 U.S. 11, 14 (1954) ("to perform its high function in the best way 'justice must satisfy the appearance of justice' ").

To that end, the Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." S.J.C. Rule 3:09, Canon 3(E)(1), as appearing in 440 Mass. 1319 (2003). The Supreme Judicial Court has held that, if faced "with a question of [her] capacity to rule fairly, the judge [must] consult first [her] own emotions and conscience" to conduct an "internal test of freedom from disabling prejudice." *Lena* v. *Commonwealth*, 369 Mass. at 575. If she subjectively believes she can rule impartially, the judge "must next attempt an objective appraisal of whether . . . [her] impartiality might reasonably be questioned." *Ibid.* (quotation omitted). "The matter of recusal is generally left to the discretion of the trial judge . . . , and an abuse of that discretion must be shown to reverse a decision not to allow recusal." *Haddad* v. *Gonzalez*, 410 Mass. 855, 862 (1991).

The judge made clear her belief that she harbored no actual bias relating to Morrison, and all parties accept this determination. See *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 18 Mass. App. Ct. 446, 450 (1984) ("The inward test, as we have observed, is largely up to the trial judge"). Only the *appear-*

*ance* of partiality is at issue here.[16] The facts, as described above, are essentially undisputed. The question, then, is whether "the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981).[17] See *Commonwealth* v. *Zine*, 52 Mass. App. Ct. 130, 130 n.1 (2001).

*Appearance of partiality.* The facts here do not present the ordinary situation of a judge who was affiliated with a firm before joining the bench, where recusal from that firm's cases may be warranted for a limited time. See generally Flamm, Judicial Disqualification: Recusal and Disqualification of Judges § 8.9, at 225-229 (2d ed. 2007), and authorities cited. Nor is it simply the case of a partner who left to start a competing firm, which may give rise to some discord. The judge's relationship with Morrison was more difficult and is distinguishable from those that we have found in other recusal cases. As the recusal determination "is extremely fact driven," we must consider the totality of the circumstances to determine whether recusal was warranted. See *Nichols* v. *Alley*, 71 F.3d 347, 352 (10th Cir. 1995). Cf. *In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997).

Here, the judge spent fifteen years at Morrison, started a competing firm, and then took part in protracted litigation against Morrison for a significant sum of money. The issue of partner compensation at Morrison had been a live one for years before the judge and her colleagues filed their suit in 2004. See *Pierce*, 452 Mass. at 722-723, 729. The judge was not a nominal party, but had a six-figure sum directly at stake. Contrast *Kordenbrock* v. *Scroggy*, 889 F.2d 69, 84 (6th Cir. 1989), rev'd on other grounds, 919 F.2d 1091 (6th Cir. 1990) (en banc), cert. denied, 499 U.S. 970 (1991). Nor was she a passive participant; her

---

[16]We use the term "appearance of partiality" as shorthand for whether a judge's impartiality might reasonably be questioned. See *Fidelity Mgmt. & Research Co.* v. *Ostrander*, 40 Mass. App. Ct. 195, 203 (1996).

[17]Federal case law, though not binding, is instructive, as the statute governing recusal of Federal judges includes an inquiry into whether a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (2006). See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 428 Mass. 543, 547 n.7 (1998); *Commonwealth* v. *Zine*, 52 Mass. App. Ct. 130, 130 n.1 (2001).

personal telephone call to the managing partner demonstrates that she was involved and invested in the dispute with Morrison, which went on for four years. Against this backdrop, the Supreme Judicial Court reversed the substantial judgment in the judge's favor at the end of 2008. A well-informed observer might reasonably doubt whether the judge could put aside the sting of that loss and treat Morrison clients with total impartiality. See *Chandok* v. *Chandok*, 406 N.J. Super. 595, 604-606 (App. Div. 2009). Cf. *Police Commr. of Boston* v. *Municipal Ct. of the W. Roxbury Dist.*, 368 Mass. 501, 507-508 (1975) (recusal of hearing officer required where party's counsel had represented hearing officer's wife in acrimonious divorce); *State* v. *Salazar*, 898 P.2d 982, 986 (Ariz. App. 1995) (reversing denial of recusal where party's counsel represented judge's former secretary in suing judge).

The judge's differing treatment of the various recusal motions before her is also relevant to whether her impartiality could reasonably be questioned. Within seven months of the *Pierce* decision, she twice determined that her impartiality was *not* reasonably open to question. Then, at least twice in October, 2009, she issued written decisions explicitly finding that her impartiality *could* reasonably be questioned. Over the next three years, she formally or informally recused herself from cases involving Morrison numerous times, thereby implicitly determining that an appearance of partiality existed. Cf. *Commonwealth* v. *Gogan*, 389 Mass. 255, 259-260 (1983). Nothing relevant occurred between October 16, 2012, when the judge recused herself in the Cucinotti case, and a few days later, when she started denying the motions to disqualify. In *Parenteau* v. *Jacobson*, 32 Mass. App. Ct. 97, 101-103 (1992), a judge stated that he "could understand why [the defendant] would not want me to hear the case," and that he "should probably disqualify myself from hearing [the defendant's] cases" based on his experiences in past cases involving the defendant, but nonetheless declined to recuse himself. We held that this was error because "if, after applying the two-part test of S.J.C. Rule 3:09, Canon 3(C)(1), a judge finds that [she] should disqualify [herself] under *either* part, [she] must allow the motion." *Id.* at 104 (emphasis in original). Here, the judge had made an essentially contemporaneous finding in the Cucinotti case that her impartiality could reasonably be

questioned, yet declined to disqualify herself. We conclude that the judge's inconsistent treatment of prior cases followed by a sudden shift in position would heighten a reasonable observer's concern.

The judge rested chiefly on two mitigating factors in determining that her impartiality could not reasonably be questioned: the interval of slightly less than four years since the *Pierce* decision ended her litigation against the firm, and the fact that Morrison attorneys twice in 2009 declined to seek her recusal. The passage of time certainly can be a factor leading to a conclusion that any concerns about a judge's impartiality would be unreasonable. See *Chitimacha Tribe of La.* v. *Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982), cert. denied, 464 U.S. 814 (1983); *Massachusetts Sch. of Law* v. *American Bar Assn.*, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994), aff'd, 107 F.3d 1026, cert. denied, 522 U.S. 907 (1997). But while time may heal all wounds, some wounds may take longer to heal, or may at least appear to, because of their severity. The judge correctly noted that there is no bright-line rule in Massachusetts for when a judge may hear cases relating to her former firm. However, the cases she cited on this issue largely address the situation where the asserted appearance of partiality derives from the judge's past association with a firm, and nothing more.[18]

---

[18]Other cases deal with attorneys who may have supported or opposed a judge's election. See, e.g., *Garcia* v. *American Income Life Ins. Co.*, 664 So. 2d 301, 302 (Fla. Dist. Ct. App. 1995). These authorities are not persuasive given that our judges are not elected, and there is a distinct set of issues associated with the disqualification of judges who must raise money for judicial elections. See, e.g., Abramson, Appearance of Impropriety: Deciding When a Judge's Impartiality "Might Reasonably Be Questioned," 14 Geo. J. Legal Ethics 55, 98-102 (2000). See also *Stretton* v. *Disciplinary Bd. of the Supreme Ct. of Pa.*, 944 F.2d 137, 145 (3d Cir. 1991) (noting that elected judges typically solicit funds from members of the bar, leading to "the unseemly situation in which judges preside over cases in which the parties are represented by counsel who have contributed in varying amounts to the judicial campaigns"); *Rocha* v. *Ahmad*, 662 S.W.2d 77, 78 (Tex. App. 1983) ("If a judge cannot sit on a case in which a contributing lawyer is involved as counsel, judges who have been elected would have to recuse themselves in perhaps a majority of the cases filed in their courts"). Cf. *Frade* v. *Costa*, 342 Mass. 5, 7-8 (1961) (disqualification not required where campaign contribution by master to attorney before master's appointment did not "indicate any closer relation between the contributor and the recipient than would ordinarily exist between members of the same local bar").

This is not such a straightforward relationship, and the passage of time must be considered along with the other relevant circumstances in analyzing whether an appearance of partiality exists. See *Chandok* v. *Chandok*, 406 N.J. Super. at 604-605. In *Chandok* v. *Chandok*, the acrimonious breakup of a law firm included litigation between a judge and his former partners, with allegations of fraud, theft, and assault. See *id.* at 601-602. Even eight years after that litigation was settled, a New Jersey appellate court reversed the judge's decision declining to recuse himself from a case involving his former partner, concluding that "the acrimonious relationship between counsel and the judge, including the prior litigation which included charges of assault and unethical conduct, gave rise to more than a reasonable belief by an objectively reasonable litigant that the judge could not be fair and impartial." *Id.* at 606.

This extreme example illustrates the point that the passage of time will not always eliminate the appearance of partiality. Although this case is not of the same character, there being no allegation of assault or unethical conduct, it does present sufficiently unique facts to compel the conclusion that the passage of time thus far, in these circumstances, does not dispel the appearance of partiality. In light of the amount at stake, length of the litigation, the judge's personal involvement in the dispute, and the judge's inconsistent rulings on prior recusal motions, we conclude that sufficient time has not passed for a reasonable person to be free from doubt as to the judge's impartiality.

Nor does the acquiescence of Morrison attorneys in 2009 justify the judge's decision. Failure to object can be probative of whether a reasonable person would question a judge's impartiality. See *Lena* v. *Commonwealth*, 369 Mass. at 575-576; *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 18 Mass. App. Ct. at 450 ("it cannot easily be argued that the appearance of bias was obvious when defense counsel took no discernible notice of it"). Nonetheless, lack of objection, like the judge's own inconsistent rulings on recusal, is not determinative of the issue, as the correct inquiry is whether reasonable doubts concerning the judge's impartiality might arise "not in the mind of the judge [herself] or even necessarily in the mind of the litigant filing the motion [to disqualify,] but rather in the mind of the

reasonable [person]." *Commonwealth* v. *Zine*, 52 Mass. App. Ct. at 131 n.1, quoting from *United States* v. *Cowden*, 545 F.2d 257, 265 (1st Cir. 1976), cert. denied, 430 U.S. 909 (1977).

Relying on the failure to object here is particularly problematic. During the Desouza and Cataldo hearings, the judge forthrightly disclosed her past relationship with Morrison and explained her belief that, due to the passage of time, she could properly hear the cases. However, her statements on the record, though well-intentioned, ultimately omitted important details, particularly the fact that she had personally called the managing partner, who along with counsel rejected her attempts at settlement. She may have believed that the Morrison partners appearing before her would have been familiar with the *Pierce* litigation, because it could have substantially impacted the firm and had been publicized in the local legal community. However, the parties, as opposed to counsel, may not have known about the case, and in any event the telephone call was not a matter of common knowledge even within Morrison. See *Chandok* v. *Chandok*, 406 N.J. Super. at 605 ("each client may have an independent right to determine whether he or she believes there is" an appearance of partiality). Burke stated without contradiction that he had been unaware of it at the time of the Cataldo hearing. In the absence of complete disclosure, the failure to object in two cases is inconclusive, especially when it was followed by numerous objections in other cases over the following few years.

Having considered the entire record, we conclude that the judge's decision resulted "from a good-faith failure to recognize how a reasonable member of the public would perceive [her] relation to" Morrison. *In re Bulger*, 710 F.3d 42, 46 (1st Cir. 2013). No one factor would necessarily require her disqualification, but in light of the undisputed facts, particularly the amount at stake, the protracted nature of the litigation, the judge's personal involvement, and the judge's inconsistent rulings on prior recusal motions by Morrison, we conclude that the judge abused her discretion in deciding that her impartiality might not be reasonably questioned. See *Lena* v. *Commonwealth*, 369 Mass. at 575; *In re Bulger, supra* at 45 ("an abuse of discretion will be found only if a reasonable reading of the record fails to support the conclusion that the judge's impartiality was not

subject to question"). She recognized this, in the Cucinotti case, as recently as a few days before her refusal to recuse herself. Cf. *Parenteau* v. *Jacobson*, 32 Mass. App. Ct. at 103-104 & n.8. Taking into account the totality of all the circumstances described above, the judge was obligated to disqualify herself.

*Other arguments.* The Commonwealth asserts two other reasons the judge should not have recused herself, at least in the Morgan case. First, it contends that Gilberti's decision to hire Morrison could be perceived as improper "judge shopping" by strategically retaining counsel who would cause the judge's disqualification. See *Edinburg* v. *Cavers*, 22 Mass. App. Ct. 212, 217 (1986) ("The rules governing the recusal of a judge are not intended to provide litigants with a means of obtaining a judge of their choice"); *In re BellSouth Corp.*, 334 F.3d 941, 956-957 (11th Cir. 2003). The judge did not address this point, and we decline to do so in the first instance.[19]

The Commonwealth also argues that Gilberti's disqualification motion was a delaying tactic, and that "the orderly administration of justice" permitted the judge to hear the case so that trial could commence as scheduled. The judge correctly declined to rely on this basis for her decision. We have previously held that, where either prong of the *Lena* test is satisfied, possible delay as a consequence of recusal is normally not a material consideration. See *Parenteau* v. *Jacobson*, 32 Mass. App. Ct. at

---

[19]We are, however, compelled to address the suggestion, made at oral argument by Morrison, that litigants can always hire particular firms in order to disqualify judges and the courts can do nothing to control the practice. While a litigant is generally entitled to counsel of his or her choice, that right is not absolute. See *Commonwealth* v. *Pena*, 462 Mass. 183, 191 (2012). If the circumstances indicate that a litigant has retained an attorney or firm in order to prevent a certain judge from hearing the case, "the obligation of 'maintaining the highest standards of professional conduct and the scrupulous administration of justice' " may require disqualification of counsel rather than the judge. *Slade* v. *Ormsby*, 69 Mass. App. Ct. 542, 545 (2007), quoting from *Mailer* v. *Mailer*, 390 Mass. 371, 373 (1983). See *Robinson* v. *Boeing Co.*, 79 F.3d 1053, 1054-1055 (11th Cir. 1996) (upholding denial of addition of third law firm for defendant, which would have caused disqualification of judge who had handled case for fifteen months); *In re BellSouth Corp.*, 334 F.3d at 956-957, 965 (upholding disqualification of attorney where client had history of hiring attorney only when attorney's uncle was assigned as judge). As noted above, the judge made no factual findings on this issue, and the Commonwealth has not argued that Morrison should be disqualified.

104 ("Possible consequences of [a judge's] recusal on the commencement of the trial are immaterial"). It is true that a party, by failing to move for disqualification in a timely fashion, may render its motion "inherently suspect" or waive the issue in some circumstances. See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 428 Mass. 543, 547-550 (1998) (*Demoulas*); *Demoulas* v. *Demoulas*, 432 Mass. 43, 52 & n.6 (2000). However, Gilberti did not seek recusal on the eve of trial or after it had concluded. Contrast *Demoulas*, 428 Mass. at 544 (defendants sought recusal "almost two years after the entry of judgment in favor of the plaintiff"); *Commonwealth* v. *Foster*, 77 Mass. App. Ct. 444, 449 n.5 (2010) (defendant moved for recusal after surrender hearing started and judge made unfavorable rulings). Although her motion to disqualify the judge was filed approximately one month before trial, it was also approximately one month after Gilberti was added as a defendant. We are therefore unable to conclude that this timing was so dilatory as to make timeliness a relevant factor in the recusal equation. See *Demoulas, supra* at 547 (untimeliness of motion filed well after trial considered along with substance of allegations of bias).

*Conclusion.* We have no reason to question the judge's good-faith belief that she could decide these cases fairly and impartially. However, even the appearance of partiality undermines confidence in the judicial system. In light of the judge's long-term relationship with Morrison, the subsequent protracted litigation, her active participation in that dispute, the amount of the claim at stake, and her inconsistent rulings on prior recusal motions, we conclude that a reasonable person might question her impartiality. We therefore reverse the orders denying the judge's disqualification and remand for further proceedings before other judges.[20] The stays previously entered in these matters are lifted.

*So ordered.*

---

[20]We note that the judge should have recused herself before entering the protective order in the Morgan case on October 29, 2012. This order, as well as any other contested orders in these cases entered by the judge, may be the subject of motions for reconsideration. See *In re Bulger*, 710 F.3d at 49 n.4. We express no opinion as to the merits of the protective order, as the record before us is incomplete on this matter. See note 13, *supra.*