Garsh, E. Susan, J.
The Commonwealth has moved that I recuse myself from this case on the grounds that I am biased against the Commonwealth and First Assistant District Attorney (“A.D.A.”) William McC-auley. [1] For the reasons set forth below, the motion is denied.[2]
I harbor no bias against the Commonwealth or against A.D.A. McCauley (or against the defendant).[3] I am free of any disabling prejudice towards the Commonwealth and its attorneys. Considerations other than the law have not and will not influence any of my rulings. I do not fear or favor the Commonwealth or the defendant. A person aware of all the facts and circumstances would not reasonably question my impartiality.
“A judge should disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party’s lawyer ...” Supreme Judicial Court Rule 3:09, Canon 3(E)(1)(a). Recusal generally is left to the discretion of the trial judge. Haddadv. Gonzalez, 410 Mass. 855,862 (1991) (holding that isolated statements of judge, viewed in the context of a fourteen-day trial, did not support a claim of bias). When faced “with a question of [her] capacity to rule fairly, the judge [must] consult first [her] own emotions and conscience.” Lenav. Commonwealth, 369 Mass. 571, 575 (1976). If the judge concludes that she is free from disabling prejudice, she “must next attempt an objective appraisal” of whether her impartiality might reasonably be questioned. Id.
With respect to the Commonwealth’s claim that “it does not believe that Judge Garsh can be free of bias against the Commonwealth,”[4] the motion for recusal focuses upon this Court’s rulings in an unrelated case thatwas tried before me in 2010; A.D.A. McCauley and then Assistant District Attorney Cynthia Brackett represented the Commonwealth. The allegation of bias is not supported by a factual basis. Some of my rulings in that case were in favor of the Commonwealth and some were not, as is the case in all of the other criminal cases over which I have presided over the last twenty years.[5] This is not the place to analyze the rulings made in that case, the reasons for which are articulated in the public record.[6] The defendant in that case was convicted of murder in the second degree. The appeal of that conviction is pending. “The mere fact that a party suffers adverse rulings during litigation does not establish lack of judicial impartiality.” Clark v. Clark, 47 Mass.App.Ct. 737, 739 (1999).
To the extent that the motion independently seeks that I recuse myself for bias against A.D.A. McCauley in connection with that prior case, there is no basis for me to do so. Moreover, “[t]o show that a judge abused [her] discretion by failing to recuse [her]self, a [litigant] ordinarily must show that the judge demonstrated a bias or prejudice arising from an extrajudicial source, and not from something learned from participation in the case” or in an earlier proceeding. Commonwealth v. Adkinson, 442 Mass. 410, 415 (2004), citing Liteky v. United States, 510 U.S. 540, 551(1994) (“not subject to depracatoiy characterization as ‘bias’ or ‘prejudice’ are opinions held by judges as a result of what they learned in earlier proceedings”). I have examined my emotions and consulted my conscience, and I am satisfied that I harbor no bias as a result of anything that may have transpired either in the 2010 case or by virtue of any of A.D.A. McCauley’s reported out-of-court statements to the media following that case. The mere assertion of an extrajudicial source does not necessarily establish bias. Liteky, 510 U.S. at 554.
The Commonwealth argues in its Memorandum that recusal is required because public confidence may be shaken in view of the “well-known and publicly documented history of antagonism—a history that has, in the past, generated broad public comment and concern.” There is no documented history of any antagonism by this judge toward A.D.A. McCauley. As *466 far as A.D.A. McCauley’s views of this judge, the “history” consists of one local newspaper article, a follow-up letter to the newspaper, and a newspaper blog posting. The article, captioned “Duarte gets life in prison for 15-year-old’s killing,” appeared on July 2, 2010.[7] It states, in part:
After the verdict, in an unusual post-trial move, co-prosecutor William McCauley, in a statement, harshly criticized Garsh for showing “antagonism to the commonwealth’s case throughout the course of the trial.”
Citing judicial ethics, Garsh declined to respond.
The article further states that McCauley was “critical of Garsh,” and purports to quote from A.D.A. McC-auley, including the statement, “[w]e expect and demand more from the witnesses and the judges who hear these most serious cases.” The article pointed out that “Garsh declined to respond to McCauley’s remarks when approached in her chambers. She said she is prevented by the judicial canon of ethics from responding because an appeal in the case is possible.” Following publication of this article, a letter from an attorney commenting on the statements attributed to A.D.A. McCauley was published on July 10, 2010.[8] The blog post, published on July 12, 2010, was captioned, “Defense bar stands up for judge criticized by prosecutor.” It repeated remarks critical of this judge attributed to A.D.A. McCauley in the first article, quoted from the letter that had been published, and also contained statements from the defense counsel in the 2010 case.[9] The blog entry included the statement that “Garsh has said that the judicial canon of ethics prevents her from responding to that statement.”
An objective reader of these materials would not reasonably question my impartiality. Instead, the reasonable observer would only conclude that in our adversarial criminal justice system, one or both adversaries is often unhappy with the rulings of the judge.[10]
The Commonwealth points to the fact that, after the special assignment in this action was docketed, the 2010 statements attributed to A.D.A. McCauley resurfaced in the media. The Commonwealth cites one such story that was captioned “Hernandez judge described as ‘extremely astute and always fair,’ ” which appeared in several media outlets.[11] The Commonwealth states that this article recited “several past points of conflict.” It did not. It simply referenced some of the 2010 statements attributed to A.D.A. McCauley.
The Commonwealth also argues that “[t]he relentless public focus on any signs of friction between judge and prosecutor that this initial story augers might reasonably impair the ability of each to execute his or her sworn duties effectively. Indeed, this is already arguably the case.”[12]1 am confident that my ability to be fair and impartial to the Commonwealth and to the defendant has not been and will not be affected by that story or by any like stories and that an obj ective person would not reasonably question my impartiality. That the Commonwealth may believe that A.D.A. McCauley might be impaired in the performance of his duties is not grounds for recusal.
Finally, the Commonwealth argues that it is immaterial whether the media has accurately reflected the true status of what the Commonwealth characterizes as the “parties’ relationship” because “this history will be exploited and sensationalized by the media before and during trial. . .”[13] “Publicity alone cannot create a reasonable doubt as to the judge’s impartiality . . . The mere fact that the issue of disqualification . .. has drawn the attention of the media, resulting in extensive coverage, is not, in itself, a good reason to reassign this case. The adoption of this view would lead to judicial abandonment of responsibility for the purity of the judicial process and ultimately undermine thé independence and integrity of the courts.” United States v. Alabama, 582 F.Sup. 1197, 1208 (N.D.Ala. 1984), affd, 762 F.2d 1021 (11th Cir. 1985).
When A.D.A. McCauley apparently chose to make remarks to the press in 2010, he knew or should have known that his statements would create the very “history” the Commonwealth now is using as the basis for seeking recusal. To require recusal in these circumstances, on the basis that there is an appearance of bias arising from media reports, would allow attorneys to use the media as a device to set up a judge for future recusal.[14] In effect, by complaining about a judge to the media, thereby generating news stories, an attorney would have the means to exercise veto power over a judge he or she did not wish to hear that attorney’s cases. ‘The rules governing the recusal of a judge are not intended to provide litigants with a means of obtaining a judge of their choice.” Edinburg v. Cavers, 22 Mass.App.Ct. 212, 217 (1986).
ORDER
For the reasons stated above, it is hereby ORDERED that the Commonwealth’s motion for recusal be and hereby is DENIED.

The motion was filed on October 9, 2013 after the completion of a scheduled Pre-Trial Conference in this case, twenty-two days after the Order for Special Assignment had been docketed. Notwithstanding the position taken by the Commonwealth in its Motion for Recusal, it did not request the Court to defer hearing and acting upon the defendant’s contested Motion for Order Prohibiting Prejudicial Extrajudicial Statements of Counsel and Their Agents or other scheduled matters.

following the hearing on the Commonwealth’s Motion for Recusal held on October 21, 2013, the Court issued an oral ruling denying the motion and indicated, at that time, that it would be filing a written decision within a few days.

Nile defendant opposes the Commonwealth’s Motion for Recusal.

The Commonwealth’s Motion for Recusal states that it “relies on the attached memorandum and the prior motion and affidavit to recuse previously submitted in the case of Commonwealth v. Eric Durand." That prior motion for recusal, in turn, states: “In support of this request, the Commonwealth states that it does not believe that Judge Garsh can be free of bias against the Commonwealth.” That prior affida- *467 vlt states, in part, that the affiant believed that this Court’s conduct “evidenced a bias against the Commonwealth . . .” and that a particular ruling of the Court “evidenced a bias toward the Commonwealth.”

No other prosecutor has ever sought my recusal on the grounds that I am biased against the Commonwealth. Ms. Brackett appeared before me after she had represented the Commonwealth in the 2010 case with A.D.A. McCauley; she did not seek my recusal. Co-counsel in this case, A.D.A. Patrick Bomberg, has appeared before me numerous times. He, likewise, has never sought my recusal.

A copy of the transcript of the trial proceeding on June 17, 2010, which was not included in the Commonwealth’s filing, has been placed in the file of this case.

http://www.southcoasttoday.com/apps/pbcs.dU/artic le?AID’/20100702/NEWS/7020327.

http://www.southcoasttoday.com/apps/pbcs.dll/artic le?AID’/20100710/OPINIC)N/7100340/-l/OPINIC)N02.

http;//blogs.southcoasttoday.com/new-bedford-crime /2010/07/12/defense-bar-stands-up-for-judge-criticized-by-prosecutor/.

“A judge lives in an atmosphere of strife, in which by nature and experience, he is expected to be a man of ‘fortitude.’ He must continually rule against one party or another. No judge can be so sanguine as to believe that he is never the object of disapproval and criticism directed to something more personal than his abstract judicial actions. If such disapproval is brought openly to his attention he does not automatically change from benign to biased. It is neither practical nor reasonable to liken a judge to an ostrich, unconcerned so long as his head is in the sand . . . We have found no case which suggests that an affidavit must be ruled to be sufficient simply because it might be natural for a judge to have resented something said about him." In re Union Leader Corp., 292 F.2d 381, 389 (1st Cir. 1961) (citations omitted) (denying petitionforwrit of mandamus to order judge to disqualify himself from conducting proceedings in case in which newspaper, which had been highly critical of judge, was a party), cert, denied, 368 U.S. 927.

E.g., http: / / www.heraldnews .com/news/xl843593643/Herna ndez-judge-described-as-extremely-astute-and-always-fair ?zc_p’l.

To the extent that the assertion in the Commonwealth’s Memorandum that “this is already arguably the case” is referring both to how the prosecutor and this judge already had been executing their duties, the Court notes that the Commonwealth’s Memorandum was filed in the courtroom at the outset of the pre-trial conference before this judge had presided over any matter in this case and before this judge had made any ruling in the case other than an order requiring that the Commonwealth’s opposition to the defendant’s Motion for Order Prohibiting Prejudicial Extrajudicial Statements of Counsel and Their Agents be filed by a certain date.

The Commonwealth cites United States v. Cepeda-Penes, 577 F.2d 754, 758 (1st Cir. 1978), for the proposition that public confidence may be shaken as much by publicized inferences of bias that are false as by those that are true. The Court did not so state. It stated, “we do not think that... a ‘reasonable factual basis for doubting the judge’s impartiality’ may be inferred solely on the basis that the press may have misinterpreted some action taken during the proceedings.” Id (emphasis in original). Spires v. Hearst Corp., 420 F.Sup. 304, 307 (D.C.Cal. 1976), also cited by the Commonwealth, is wholly inapposite. In that case, the plaintiffs’ lawsuit concerned their positions as former newspaper dealers for the Los Angeles Herald Examiner and their treatment by that newspaper. After the lawsuit had been initiated, an article appeared in the Los Angeles Herald Examiner that was extremely complimentary of the trial judge and which stated that the judge had been nominated to the United States Ski Hall of Fame by the newspaper’s ski writer. Not surprisingly, the trial judge agreed that his impartiality might reasonably be questioned, and he recused himself.

 ^'“Federal case law, though not binding, is instructive, as the statute governing recusal of federal judges includes an inquiry into whether a judge’s ‘impartiality might reasonably be questioned.’ ” Commonwealth v. Morgan RV Resorts, LLC, 84 Mass.App.Ct. 1, 10n.l7 (2013). Numerous federal courts have held that criticism of a judge in the media is not sufficient to support a charge of bias or appearance of bias on the part of the judge toward the critic. See, e.g„ United States v. Olander, 584 F.2d 876, 887 (9th Cir. 1978) (motion to disqualify properly denied where defendant had been leader in efforts to impeach the judge, and there had been widespread publicity and news coverage about the impeachment campaign), vacated on other grounds, 443 U.S. 914 (1979); In re United States, 666 F.2d 690, 695 (1st Cir. 1981) (“Although public confidence may be as much shaken by publicized inferences of bias that are false as by those that are true, a judge considering whether to disqualify himself must ignore rumors, innuendoes, and erroneous information published as fact in the newspapers ... To find otherwise would allow an irresponsible, vindictive or self-interested press informant and/or an irresponsible, misinformed or careless reporter to control the choice of judge” (citations omitted)); In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1309 (2d Cir. 1988) (“Judicial inquiry may not... be defined by what appears in the press. If such were the case, those litigants fortunate enough to have easy access to the media could make charges against a judge’s impartiality that would effectively veto the assignment of judges. Judge-shopping would then become an additional and potent tactical weapon in the skilled practitioner’s arsenal”); United States v. Cooley, 1 F.3d 985, 994 n.5 (10th Cir. 1993) (‘The mere fact that a defendant has made derogatory remarks about a judge is insufficient to convince a sane and reasonable mind that the attacked judge is biased or prejudiced . . . The same is true regarding an objective person, knowing all the facts, assessing whether the judge’s impartiality may reasonably be questioned. Any other conclusion would allow defendants to cause the recusal of judges simply by making scurrilous and disparaging remarks or charges about them. Permitting parties to manipulate the system with falsehoods or insults in such a manner would be a bizarre application of [the federal disqualification statute]” (citations and internal quotations omitted) (emphasis in original)); United States v. Fujimoto, 101 F.Sup. 293,296 (D.Haw. 1951) (“Only a psychic pleader could allege that because a defendant has published uncomplimentary statements concerning a judge, the latter will be unable to give his critic a fair and impartial trial. If such a fantastic procedure were permitted, a defendant could get rid of a judge by the simple expedient of publishing a scurrilous article, truthfully alleging that the article was published, and clinching the matter by asserting the bald conclusion that, since the article was uncomplimentary, the judge must of necessity be prejudiced against the publisher!” (emphasis in original)); United States v. Garrison, 340 F.Sup. 952, 956 (E.D.La. 1972) (“Affiant’s contention reduces itself to the proposition that he can avoid being tried before a particular judge if he has publicly voiced disapproval of that judge or that judge’s work . . . That simply is not the law . . .”); United States v. Sinclair, 424 F.Sup. 715, 719 (D.Del. 1976) (“It has been universally held that even prior written attacks upon a judge by a party to a suit are legally insufficient to support a charge of bias on the part of the judge toward the author of such a statement”).